UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Tine Hathaway</u>

    v.                                Civil No. 10-cv-381-JD
                                    Opinion No. 2011 DNH 125

<u>Michael J. Astrue, Commissioner,</u>
<u>Social Security Administration</u>

O R D E R

Tine Hathaway seeks judicial review, pursuant to 42 U.S.C. 405(g), of the decision of the Commissioner of the Social Security Administration, denying her application for social security benefits under Title II. Hathaway contends that the decision must be reversed because the Administrative Law Judge ("ALJ") erred in assessing her credibility and residual functional capacity and improperly found that she could return to her former work. The Commissioner moves to affirm the decision.

Discussion

The parties' Joint Statement of Material Facts shows that Hathaway injured her back in June of 2001 and has been treated for back pain caused by a lumbar herniated disc and related depression since that time. Hathaway contends that she is disabled by back pain and depression. The ALJ, however, found

that she was not disabled but instead retained the residual functional capacity to do unskilled light work without climbing ladders and with only occasional requirements for postural activities such as bending.

The ALJ concluded, based on a vocational expert's testimony, that Hathaway could return to her former work or do other jobs that existed in the national economy.  Hathaway challenges the ALJ's residual functional capacity assessment, his failure to fully credit her testimony about her disabling conditions, and his conclusion that she could do work which required a specific vocational preparation level of 2.  The Commissioner contends that the record supports the ALJ's residual functional capacity finding and his decision not to credit Hathaway's testimony and disputes Hathaway's interpretation of the requirements of a specific vocational preparation level of 2.

In reviewing the final decision of the Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  The court defers to the ALJ's factual findings as long as they are supported by substantial evidence.  § 405(g).  Factual findings are not conclusive, however, if they are derived by "ignoring evidence, misapplying

the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

"Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010). The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence on the record. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). It is the role of the ALJ, not the court, to resolve conflicts in the evidence. Id.

In assessing Hathaway's residual functional capacity, the ALJ relied on the opinions of state agency consultants, Dr. Jonathan Jaffe and Michael Schneider. The ALJ discounted the opinions of Lili Cargill, ARNP, Hathaway's treating nurse practitioner, because her opinions were inconsistent with the findings of a consultative physical therapist in 2006 and because the record lacked evidence that Hathaway had limitations in using her hands or arms. The ALJ also noted that Cargill provided her opinions in 2009, although she had not seen Hathaway since 2007.

The ALJ discredited Hathaway's testimony about the nature of her back pain on the grounds that the frequency of her treatment diminished after 2002, that her orthopedic surgeon and his nurse

3

practitioner stated in 2007 that she had not received treatment for her back since 2004, that the record shows no treatment after 2007, that she was unwilling to try different treatment methods such as surgery, and that the opinion of a consultative physical therapist in 2006 was inconsistent with Hathaway's testimony. The ALJ also noted that Lili Cargill, Hathaway's treating nurse practitioner, indicated that Hathaway's pain was stable and controlled on pain medication.  With respect to mental functioning, the ALJ also on a 2006 examination that showed appropriate attention and concentration but low to average intellectual functioning.  The ALJ also observed Hathaway during her testimony at the hearing and noted that she was articulate and could remember details.

   As Hathaway points out, the ALJ misinterpreted evidence in the record.  Contrary to the ALJ's view, Hathaway continued to receive treatment for back pain throughout the period.  The treatment note that the ALJ attributed to Hathaway's orthopedic surgeon about Hathaway's lack of treatment appears instead to have been written by a nurse practitioner and is not consistent with the record.  Hathaway also notes that her testimony at the hearing was brief and that, nevertheless, she had to get up and walk because of back pain.

Hathaway reported to Cargill in January of 2007 that her pain was "stable," but in May of 2007 Hathaway reported that her pain was much worse. At an appointment in October of 2008, Hathaway reported back pain with spasms and was unable to lift her legs over thirty degrees. Cargill prescribed Vicodin, Flexeril, Wellbutrin, and Trazodone. In March of 2009, Cargill wrote that Hathaway required her prescribed medications to keep her stable.

The ALJ also failed to discuss the opinions of Dr. Boucher, an independent medical examiner, who provided opinions about Hathaway's limitations in 2003 and 2004. Further, the ALJ's criticism of Hathaway for failing to pursue treatment options is contradicted by the record, which shows that she followed the conservative options provided to her and also, as her symptoms continued, considered surgery.

Although the record includes evidence that supports the ALJ's findings, the ALJ's determinations about what weight to give Nurse Practitioner Cargill's opinions and the credibility of Hathaway's testimony were based, at least in part, on misinterpretations of the record evidence. If the ALJ had correctly understood Hathaway's treatment record and considered Dr. Boucher's opinions, his findings might have been different. Because the ALJ misinterpreted the record and appears to have

5

ignored Dr. Boucher's opinions, the case must be remanded for further proceedings.

## Conclusion

For the foregoing reasons, the applicant's motion to reverse (document no. 11) is granted. The Commissioner's motion to affirm (document no. 14) is denied. The court notes that it is incumbent upon the ALJ to undertake a more careful review of the evidence than was undertaken in this case.

Under sentence four of § 405(g), the case is reversed and remanded for further proceedings. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

August 2, 2011

cc: Raymond J. Kelly, Esquire
 Gretchen Leah Witt, Esquire